[Cite as *State v. Talbert*, 2019-Ohio-3163.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170247 |
| | | TRIAL NO. B-1506966 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RANDOLPH TALBERT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 7, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   Randolph Talbert appeals his conviction, following a jury trial, for the murder of Raj-Paul Doughty.  Because we find that the conviction was supported by the manifest weight of the evidence, no prosecutorial misconduct occurred, Talbert was not denied the effective assistance of counsel, and the trial court committed no plain error, we affirm the trial court's judgment.

### Background Facts

{¶2}   On December 11, 2015, Doughty was shot to death inside the men's room at Lamarr's Lounge, a club in Lincoln Heights.

{¶3}   Shortly after midnight, Doughty entered the men's room and greeted the only other occupant, Jason Rutherford, who was standing at a mirror.  Doughty walked into the single, doorless, stall and stood at the toilet.  Then, according to Rutherford, within a few seconds, "somebody busted the door and had a gun.  I heard a shot.  I ducked down and ran."  Rutherford said he heard another shot as he ran out of the restroom.  At trial, Rutherford did not identify Talbert, whom he knew as "Noggie," as the shooter.  And he denied that he had told a police detective that Talbert was the person who had entered the restroom with a gun.  Rutherford's statement to police, after he was told Talbert had been arrested, was, "Somebody busted, I guess - - Noggie, or whoever, bust through the door."

{¶4}   Adrian Williams, a promoter at the club, was standing in the crowded area outside the men's room, when he heard one gunshot, followed by more gunshots.  He saw two people fall down as he backed into the women's restroom for cover.  When he came out of the restroom, he saw Doughty, whom he knew as "Papoo," lying on the floor.  The second person was gone.

{¶5}  Jasmine Moreland, a dancer at the club, testified that she was performing for a club patron in the area outside the men's room, when she heard gunshots coming from the bathroom.  She testified that "we heard the gunshots, we just stopped and, like, everybody in the back just paused and then the bathroom door just flew open."  She testified that Papoo and "the shooter" came out of the bathroom and fell to the floor, and that the shooter was holding a gun in his hand.  She said that Papoo was holding onto the other man when they "busted out the door."  She testified that she thought the other man "was trying to get [Papoo] off of him, but he still had the gun in his hand while he was trying to get [Papoo] off of him."

{¶6}  Moreland described the gun she saw as "a black, small gun."  She said, "It was like it could be like a .25 or something."  When asked whether the gun was an automatic or a revolver, Moreland replied, "I think it was automatic, I think.  It was the square one."  She explained, "When I say square, I'm basically describing it as like, if you know how a .22 is made with a small barrel, like it wasn't small like that.  It was just the box type of gun."

{¶7}  At trial, Moreland identified Talbert as the gun-holding man who had come out of the bathroom with Doughty.

{¶8}  An autopsy revealed that Doughty sustained six gunshot wounds to the torso.  Entrance wounds indicated that Doughty had been shot four times from behind and once in the chest.  The sixth wound had indistinguishable entrance and exit wounds.  The coroner testified that the shot to the chest went through Doughty's pulmonary artery, causing him to bleed to death.  Three bullets were recovered from Doughty's body.

{¶9} Police recovered seven .25-caliber cartridge casings and three fired bullets from inside the men's room. A firearms examiner testified that all six fired bullets (three from the autopsy and three from the men's room), and each of the seven casings, had been discharged from the same gun. The gun was never found.

{¶10} Talbert did not testify or present witnesses on his behalf. The defense's theory of the case was that Talbert had not been in the bathroom when Doughty was shot, and that, as he and the other club patrons fled in panic following the gunfire, he had become entangled with Doughty when Doughty stumbled out of the bathroom. Defense counsel argued that neither Talbert's fingerprints nor his DNA had been found in the bathroom, and suggested that Rutherford had shot Doughty and fled before Doughty could follow him out of the bathroom.

### Weight of the Evidence

{¶11} In his first assignment of error, Talbert argues that his conviction was against the manifest weight of the evidence. In a challenge to the weight of the evidence, an appellate court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶12} Based upon our review of the record, we cannot conclude that the jury lost its way in finding Talbert guilty of murder. The state presented evidence that Talbert came out of the bathroom entwined with Doughty immediately after the shots were fired. Moreland, an eyewitness to the events of that night, identified Talbert as the man who came out of the bathroom with Doughty. And she testified

that Talbert was holding a gun. The state also presented evidence that Doughty died as a result of gunshot wounds. This is not the "exceptional case in which the evidence weighs heavily against the conviction." *See id.* at 387. Therefore, we hold that Talbert's murder conviction was not against the manifest weight of the evidence. We overrule the first assignment of error.

### *Prosecutorial Misconduct*

{¶13} In his second assignment of error, Talbert argues that prosecutorial misconduct deprived him of a fair trial. He asserts that the prosecutor's reference to Talbert as "the shooter" during a witness's testimony deprived him of a fair trial.

{¶14} The test for whether prosecutorial misconduct mandates reversal is whether the prosecutor's remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 21, ¶ 45. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 110, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶15} Where defense counsel failed to object to the alleged misconduct, all but plain error is waived. *Id.* at ¶ 109. To prevail on plain-error review, Talbert must establish both that misconduct occurred and that but for the misconduct, the outcome of the trial clearly would have been otherwise. *Id.*

{¶16} During direct examination, Jasmine Moreland testified that she was in the club facing the men's room door when she heard gunshots, saw the door as it "just flew open," and saw the victim and "the shooter" come out of the bathroom and fall to the floor in front of her. The witness said that she saw a gun "[i]n the shooter's

5

hand." Even though she had not witnessed the shooting itself, her use of the term "shooter" to describe the gun-holding individual was understandably a way for her to identify and describe the person she saw.

{¶17} In his follow-up questions, the prosecutor used the same descriptive term that the witness had used. He asked whether she recalled what the "shooter" was wearing and what he did with the gun. This was a logical way for the prosecutor to refer to the person, since it was how Moreland had referred to him. Defense counsel raised no objection to the prosecutor's use of the word "shooter," thereby waiving all but plain error. *See Pickens* at ¶ 109.

{¶18} We cannot say that that the prosecutor's use of the witness's descriptive term was improper, or that the outcome of the trial would have been different. Therefore, no plain error occurred. We overrule the second assignment of error.

### *Assistance of Counsel*

{¶19} In his third assignment of error, Talbert argues that he was denied the effective assistance of trial counsel. To prevail on an ineffective-assistance claim, an appellant must demonstrate that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶20} In reviewing defense counsel's performance, we must remain highly deferential. *Strickland* at 689. We must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

{¶21} An appellant's demonstration that counsel's performance was deficient does not warrant the reversal of a conviction if counsel's error had no effect on the judgment. *Id.* at 691; *Bradley* at 142. The appellant must affirmatively demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland* at 693-694; *Bradley* at 143.

{¶22} Talbert asserts that defense counsel should have objected when the witness referred to him as "the shooter," and when the prosecutor used the same term during his examination of the witness. But the failure to make objections alone is not enough to sustain an ineffective-assistance claim. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168.

{¶23} Here, defense counsel's decision not to object to the reference was a reasonable trial strategy calculated to call the witness's testimony into question. In cross-examination, defense counsel drove home the point that the witness, despite her use of the term "shooter," had not actually seen the shooting. And in closing argument, defense counsel argued that the witness's description of Talbert as "the shooter" showed that she was an unreliable witness: "[B]ad witnesses report what they assume and not what they actually saw, and she didn't see anyone shoot anybody." Defense counsel's decision to cross-examine the witness regarding her use of the term "shooter," rather than object to it during direct examination, was a tactical or strategic trial decision, and did not constitute ineffective assistance of counsel. *See State v. Stidhum*, 1st Dist. Hamilton No. C-170319, 2018-Ohio-4616, ¶ 44. We overrule the third assignment of error.

*Plain Error*

{¶24} In his fourth assignment of error, Talbert argues that the trial court committed plain error in allowing references to him as "the shooter," and in failing to voir dire a juror who had brief contact with his mother during the trial. To prevail on a claim of plain error, an accused must show that an error occurred, that the error was plain, and that the error affected the outcome of the trial. *See* Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The accused must demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing claims of ineffective assistance of counsel. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶25} As for Talbert's assertion that the trial court committed plain error by allowing the witness and the prosecutor to refer to him as "the shooter" during the witness's direct examination, we have already determined that this did not rise to the level of plain error.

{¶26} Talbert also asserts that the trial court committed plain error by failing to voir dire a juror who reportedly had had a conversation with Talbert's mother during the course of the trial.

{¶27} On the third day of trial, before the jury entered the courtroom, the prosecutor informed the trial court that:

> [O]ne of the jurors, and I think it's Juror Number, maybe 3. He was outside - -I don't know if it was Friday or Thursday, but talking to the defendant's mother outside. I don't know the content of what was discussed at all, but it is a little bit troubling that one of our jurors is talking to the defendant's mother.

{¶28}  The trial court offered to conduct a voir dire of the juror at the next break to discover the content of the conversation.  The court also indicated that it would remind jurors of the admonitions previously given.  The court noted:

> I don't know whether he was aware of the fact that it was the person's mother or not.  I don't even know if that took place, but we can certainly voir dire and explore that further.

{¶29}  In response, defense counsel stated:

> I have, in an overabundance of caution, moved her around away from the entrance to the jury room.  She had no way of knowing who was [a] juror[] and who wasn't and that the entrance to the jury room is over there, but I did move her around so even if somebody is just being pleasant and says hi that it won't happen again.

{¶30}  When the jury came back in, the court reminded them of the prior instructions, telling them not to talk with anyone about the case or allow anyone to discuss it with them.  The court asked:  "Is everybody able to follow those instructions so far?"  The record does not show any oral response by any juror, so the reasonable inference is that no one indicated they were not able to follow the instructions.

{¶31}  The court further asked:  "Anybody had an issue yet with anything?"  Again, no one indicated that they had any issue.  The court concluded:  "So, so far, we're good to go."  The court was satisfied with the responses at that point and proceeded with trial.

{¶32} At a break in the trial, outside the presence of the jury, the court asked if either party wished to have the court examine the juror. Both parties expressly declined. The following exchange took place:

[THE PROSECUTOR]: Judge, we're good. We decided that we're not asking the Court nor do we want the Court to single him out and ask him any questions and we'll just go on as we've been going on.

THE COURT: I assume defense has a similar position.

[DEFENSE COUNSEL]: Yes, Your Honor. My understanding is that it was a casual, friendly conversation that had nothing to do with the case.

THE COURT: With that said, then, we'll leave everything that way.

{¶33} When the trial court learns of "private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury," the trial court must conduct a hearing to determine the effect of the contact. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 224, quoting *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The presumption of prejudice arises only where communication with the juror concerns "the matter pending before the jury." *State v. Murphy*, 65 Ohio St.3d 554, 575, 605 N.E.2d 884 (1992); *Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, at ¶ 161.

{¶34} In this case, there was no allegation that the contact between the defendant's mother and the juror was "about the matter pending before the jury." And defense counsel specifically informed the court that the contact did not relate to

the trial. Under these circumstances, we conclude that Talbert has failed to demonstrate any error, let alone plain error. We overrule the fourth assignment of error.

### Cumulative Error

{¶35} In his fifth assignment of error, Talbert argues that the cumulative effect of the trial errors, including the trial court's plain errors, prosecutorial misconduct, and defense counsel's errors, deprived him of a fair trial. However, because none of Talbert's claims of plain error, prosecutorial misconduct, or ineffective assistance has merit, "he cannot establish a right to relief by simply joining those claims together." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 222. We overrule the fifth assignment of error.

### Conclusion

{¶36} Consequently, we affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry this date.