[Cite as *State v. Abdalla*, 2023-Ohio-1054.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220145 |
| | | TRIAL NO. 21CRB-19037 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| GAMAL ABDALLA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 31, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Andrew W. Garth,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Gamal Abdalla appeals his conviction, after a jury trial, for violating a protection order. In two assignments of error, Abdalla contends that the trial court erred in overruling his motion for a mistrial and that his conviction was against the manifest weight of the evidence. For the following reasons, we affirm the trial court's judgment.

## Factual Background

{¶2} Gamal Abdalla was charged with violating a protection order after driving by and parking in front of the home of the protected party, his wife Sorora Ramadan. After a jury trial, he was found guilty.

{¶3} At the trial, Officer Lakisha Gross, a Cincinnati Police Officer, testified that she was dispatched to the home of Ramadan in response to a domestic-violence call. As she approached the home, Gross passed a dark grey SUV that was leaving the cul-de-sac where the home was located. She did not see the driver.

{¶4} When she arrived at the home, she spoke with Ramadan who seemed "frazzled." Ramadan reported that she had a protection order against her husband Abdalla, and he had come to her home. Ramadan provided photographs of the SUV parked in front of her home. Gross estimated that SUV was parked within 500 feet of Ramadan's home. After verifying the existence of the protection order, Gross filed a complaint against Abdalla. The protection order prohibited Abdalla from being within 500 feet of Ramadan or the home.

{¶5} The state's next witness was Ramadan, who testified that she had been married to Abdalla for 15 years, and they had four children. Ramadan had obtained a protection order in April 2021, which gave her sole possession of the marital home. After obtaining the protection order, she filed for divorce.

2

{**¶6**}   On October 23, 2021, Ramadan became aware that Abdalla was parked outside of her home.  She heard Abdalla shouting their children's names and honking the horn.  Although Ramadan did not see Abdalla, she recognized his voice and saw his 2014 grey Ford Explorer.  Ramadan took photos of the car parked in front of her house.  Ramadan testified that Abdalla had no visitation rights at that time.  The protection order did not grant any parental rights to Abdalla.  The order further provided that parenting rights do not permit Abdalla to violate the order.  After Ramadan's testimony, the state rested.

{**¶7**}   After the jury was released for a lunch break, Abdalla moved for a mistrial because the interpreters had not been sworn in prior to trial.  The interpreters were then sworn in, and the trial court amended the language of the oath to reflect that they had already interpreted the testimony.

{**¶8**}   Ultimately, the jury found Abdalla guilty of violating the protection order.

### Motion for Mistrial

{**¶9**}   In his first assignment of error, Abdalla contends that the trial court erred in overruling his motion for a mistrial because the interpreters were not sworn in at the start of the trial.

{**¶10**} An appellate court reviews a trial court's ruling on a motion for a mistrial for an abuse of discretion. *State v. Stidhum*, 1st Dist. Hamilton No. C-170319, 2018-Ohio-4616, ¶ 55.  An abuse of discretion is more than an error of law or of judgment; it is an unreasonable, arbitrary or unconscionable attitude on the part of the court. *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).  A mistrial should only be granted where "the ends of justice so require and a fair trial is no longer

possible." *Stidhum* at ¶ 55, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶11} R.C. 2311.14(B) provides, "Before entering upon official duties, the interpreter shall take an oath that the interpreter will make a true interpretation of the proceedings to the party or witness, and that the interpreter will truly repeat the statements made by such party or witness to the court, to the best of the interpreter's ability."

{¶12} Here, the interpreters were not given the oath until the evidentiary portion of the trial was concluded. Abdalla argues, without citing to any legal authority, that the delayed administration of the oath rendered the trial unfair, requiring the court to grant the motion for a mistrial.

{¶13} During the proceedings, Abdalla raised no objection as to the qualifications of the interpreters or that the interpreters did not properly translate the proceedings. As soon as the court was made aware that the interpreters had not been sworn, the court reporter administered the oath, and both interpreters swore that they had made true interpretations of the proceeding. Abdalla does not dispute the accuracy of the translation, and the record is devoid of any evidence to support a finding that the interpreters did not give truthful interpretations of the proceedings.

{¶14} Absent any evidence that Abdalla was denied a fair trial, the trial court did not abuse its discretion in overruling the motion for a mistrial. *See Stidhum*, 1st Dist. Hamilton No. C-170319, 2018-Ohio-4616, at ¶ 55 (holding that a mistrial should only be granted where "the ends of justice so require and a fair trial is no longer possible."). Accordingly, we overrule the first assignment of error.

### Manifest Weight of the Evidence

{¶15} In his second assignment of error, Abdalla argues that the conviction is

4

contrary the manifest weight of the evidence because the victim's identification was not credible.

{¶16} In reviewing a weight-of-the-evidence claim, we review " 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "[I]t is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Bailey* at ¶ 63.

{¶17} Abdalla asserts that Ramadan's identification of him as the driver of the Ford Explorer was not credible. Ramadan testified that she recognized her husband's car and his voice as he was shouting their children's names. The jury heard all the testimony and found Abdalla guilty, and we afford substantial deference to the credibility determinations of the factfinder. We cannot conclude that the fact finder lost its way or created a manifest miscarriage justice.

{¶18} We overrule the second assignment of error.

### Conclusion

{¶19} Having overruled Abdalla's two assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**BERGERON,** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.