[Cite as *State v. Rose*, 2022-Ohio-3529.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRYANT C. ROSE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0014**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No.  20-CR-154

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed, Upheld and Vacated.

---

*Atty. Jane M. Hanlin,* Jefferson County Prosecutor*, Atty. Bernard Battistel*, Jefferson County Prosecutor's office, 16001 State Route 7, Steubenville, Ohio 43952 for Plaintiff-Appellee and

*Atty. Dennis W. McNamara*, 88 East Broad Street - Suite 1350, Columbus, Ohio 43215 for Defendant-Appellant.

Dated:  September 29, 2022

**Robb, J.**

{¶1} Defendant-Appellant Bryant C. Rose appeals after being convicted by a jury of drug possession with a major drug offender specification in the Jefferson County Common Pleas Court. He raises various allegations of ineffective assistance of trial counsel. He also complains his attorney failed to contest the constitutionality of a sentencing statute known as the "Reagan Tokes Law." Lastly, he complains the order imposed various costs without mentioning them at the sentencing hearing (including "court-appointed counsel costs").

{¶2} For the following reasons, Appellant's conviction and sentence are affirmed. The portion of the sentencing entry ordering Appellant to pay various court costs is upheld, except to the extent it attempted to impose court-appointed counsel fees. The phrase "Court-Appointed Counsel Costs" is struck from the sentencing entry, and any attempt to impose counsel fees is vacated.

## STATEMENT OF THE CASE

{¶3} The police obtained a warrant to place a GPS tracker on a silver car, which would be driven to Las Vegas after being rented by a confidential informant. The warrant also allowed the police to search the car and an accompanying blue car when they returned to Jefferson County six days later. (Tr. 124). The travelers included Appellant and three females (witnesses A, B, and C). When the police stopped the vehicles on October 26, 2020, witness A was driving the silver car with no passengers, and witness B was driving the blue car with witness C in the front seat and Appellant in the back seat. (Tr. 126-127). A K-9 unit alerted to the trunk of the car in which Appellant was riding. (Tr. 127). The trunk was almost full and contained multiple items such as detergents and soaps. (Tr. 128).

{¶4} In addition, a red satchel in the trunk of the blue car contained nearly 2,000 grams of cocaine compressed into two blocks. (Tr. 130). This bag also contained men's clothing, marijuana in jars, jar labels with Appellant's name on them, and an October 23, 2020 receipt from a Nevada marijuana dispensary. (Tr. 129-135). The receipt listed a purchaser identification number matching the identification number on Appellant's medical marijuana card, which was found in the back seat where Appellant was sitting. (Tr. 134).

Case No. 21 JE 0014

**{¶5}** A November 4, 2020 indictment charged Appellant with possession of 100 grams or more of cocaine accompanied by a major drug offender specification, which requires a maximum first-degree felony mandatory prison term. *See* R.C. 2925.11(A),(C)(4)(f); R.C. 2929.14(A)(1)(a),(B)(3) (the mandatory prison term shall be the longest minimum prison term prescribed (A)(1)(a) for the offense).

**{¶6}** At trial, witness A testified Appellant occupied a room in her residence in Steubenville. She said Appellant's street name was Dollar or Dollar Bill. (Tr. 67). Witness A claimed Appellant asked her to rent a car to take him to Las Vegas to attend a family reunion. (Tr. 69). Appellant told her he would pay for the rental car and all expenses on the trip. (Tr. 69, 73). As she did not have a driver's license, she texted the informant to ask him to rent the car. (Tr. 68-70). She previously introduced the informant to Appellant. (Tr. 85).

**{¶7}** Witness A testified the informant was supposed to drive; however, after renting the silver car, the informant chose not to make the trip with them. Consequently, she drove the silver car to Las Vegas with witness B helping her with the drive. (Tr. 69-70). Witness C and Appellant rode in the blue car. During the trip, the four of them stayed in one hotel room. (Tr. 71). In Las Vegas, witness A was unable to purchase marijuana at the dispensary because they refused to accept her paper form of identification. (Tr. 72).

**{¶8}** Witness A described herself as an alcoholic and said she was drunk most of the time in Las Vegas; she noted she could not wait to leave the witness stand so she could have a drink. (Tr. 74, 78). In discussing the amount of money it would take to purchase a large amount of cocaine, the witness said she rarely had money while observing, "I can barely get a fifty in my hand every now and again." (Tr. 78). Yet, she did not deny she had photographs of money on her phone (specifically $200 in one photograph and $150 in another). (Tr. 80). Witness A explained she went on the trip because she had never been to Las Vegas and Appellant was paying. (Tr. 73). She insisted she did not pick up cocaine on the trip, did not see the cocaine during the trip, and never saw that much cocaine in her life. (Tr. 73, 80).

**{¶9}** On the way home, witness A drove by herself in the silver car. She attributed this to Appellant being mad at her for her drunkenness; she also believed witness B had to drive the blue car due to witness C's poor condition. (Tr. 74-75). Witness

A acknowledged her observation of Appellant carrying the red bag (as she admitted to the detective after the police stopped the cars). However, her testimony pointed out that Appellant carried all their belongings into the room and claimed she had no knowledge of who owned what bags in the blue car's trunk. (Tr. 75-77). She also testified she knew Appellant for five years (on and off) and never saw him with a large amount of money or an expensive vehicle. (Tr. 80, 84-85).

{¶10} The next to testify was witness B, who said she knew Appellant through witness A but did not know him well. (Tr. 89). Witness B paid for no part of the trip except some of her food. She believed Appellant paid for all of the hotels; she saw him pay at a desk in Colorado. (Tr. 90). Appellant and witness C were already in the shared Las Vegas hotel room when she and witness A arrived. (Tr. 99). Witness B said she spent most of the time in Las Vegas wandering alone (stating the other females were too drunk or too dope-sick to have fun and Appellant was said to be at a family reunion). (Tr. 91, 100). She testified Appellant went into a marijuana dispensary but she could not enter because her identification was expired. (Tr. 91-92). Witness B said she did not purchase or see cocaine on the trip. (Tr. 92, 96).

{¶11} Although her driver's license was expired and she rode to Las Vegas in the silver car with witness A, Appellant made witness B drive the blue car from Las Vegas to Jefferson County. She complied as he paid for the trip. (Tr. 95). She said witness C was dope-sick while occupying the passenger seat of the blue car on the way home. She also confirmed Appellant was angry with witness A because her "drunk mouth was running ninety miles a minute * * *." (Tr. 94-95). Witness B testified Appellant's belongings were in the blue car and her own belongings were in the silver car, except for a bag with snacks. (Tr. 94-95). She attested Appellant "had the red bag with him the whole time he was there. It was his toiletries and his money and everything." (Tr. 96).

{¶12} Witness C testified she was invited on the paid-for trip when witness A called her mere minutes before they left. (Tr. 103-104). She knew Appellant for ten years. (Tr. 111). Because she and Appellant were in the same car the entire trip, she heard Appellant call his daughter to have her pay for the hotel rooms on his behalf when they arrived in a town. (Tr. 104-105). She said he planned the trip and paid for it; he also gave her $100 to eat and go out. (Tr. 107, 116). She believed Appellant took the blue

car to his family reunion one day in Las Vegas before she woke. (Tr. 113). She and witness A took the silver car for a short drive down the Las Vegas Strip. (Tr. 114).

{¶13} Due to her rushing to pack, she forgot to pack her Subutex; she was sick and sweating on the way home. (Tr. 106, 109). She noted she did not have a driver's license. (Tr. 109). She said Appellant was irritated with witness A on the way home because witness A wanted to buy alcohol for the drive home, but he wanted her to drive sober. (Tr. 107).

{¶14} Witness C said she had one small backpack in the trunk of the blue car. (Tr. 110). She testified Appellant carried the red bag and kept it with him often. "He slept with it underneath the bed and he would always put it in the car, locked." (Tr. 107). He also kept the key fob to the blue car with him so no one could open the car or trunk without him. (Tr. 107-108, 116). She acknowledged she originally told the police she did not see Appellant with a red bag but explained, "I didn't know, specifically, what bags they were talking about. There were several. He had, like, thirty of them in the trunk." (Tr. 109-110). She also admitted she might have been shielding Appellant when she was first questioned by the police. (Tr. 116). Witness C said she did not buy cocaine on the trip and did not know there were 4.4 pounds of cocaine in the red bag. (Tr. 108). She said Appellant sold her cocaine in the past. (Tr. 107).

{¶15} A detective testified the police gained information from a confidential informant about drugs being transported from Las Vegas in a rental car. He said the police let the informant rent the car but would not let him drive for safety reasons, which is why they placed the GPS device on the rental car. (Tr. 120). Another officer testified about a video map he created with the GPS data. (Tr. 174-175). The detective said none of the four travelers had a driver's license. (Tr. 121).

{¶16} The detective explained the stop and search (reviewed supra). He estimated the nearly 2,000 grams of cocaine was worth approximately $60,000. (Tr. 137). He noted drug couriers often take two cars on a trip so the decoy car could either be a lookout in the front or a diversion in the back of the convoy. (Tr. 120-121). He also noted dealers are known to use addicts to assist in transportation. He opined the three females were decoys and did not have the capability to procure this amount of drugs. (Tr. 138-139). The detective found screenshots on Appellant's phone showing hotel prices and noticed he searched the internet for hotels. (Tr. 150).

Case No. 21 JE 0014

{¶17} The informant was paid $750 for the information (after the fact) and $100 for reimbursement for the rental car (apparently for the extra day mentioned by witness A). (Tr. 143). The detective said the informant did not ask to be paid for the information and had no cases pending. (Tr. 143). When defense counsel suggested the informant lied about who was paying for the trip, the detective noted he saw messages from witness A to the informant. (Tr. 149). On redirect, the messages were introduced as an exhibit, confirming witness A asked the informant to rent and to drive a car on a trip, which would be funded by Dollar; Appellant's legal name was also mentioned followed by the warning not to repeat the name. (Tr. 163-164).

{¶18} The detective then noted witness A was a drug addict, an alcoholic, and a prostitute who was arrested numerous times for theft and possessing small amounts of drugs and paraphernalia. (Tr. 164). In discussing the defense counsel's question about the lack of evidence indicating Appellant could finance the operation, the detective pointed out Appellant was charged with possession and was not charged with an offense requiring proof of his personal purchase, noting he could have been carrying the cocaine for someone else. (Tr. 167). In closing, the defense emphasized the state's failure to call the informant to testify; the prosecutor replied by noting she decided not to call the informant after being permitted to present the messages from witness A asking the informant to rent the car. (Tr. 194, 198).

{¶19} The jury found Appellant guilty as charged. The court imposed the mandatory prison term of eleven years and arrived at the indefinite maximum term by adding 5.5 years under the Reagan Tokes Law, for a final sentence of 11 to 16.5 years. The May 14, 2021 sentencing entry imposed various costs. Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR ONE: COUNSEL'S TRIAL CONDUCT

{¶20} Appellant sets forth three assignments of error, the first of which alleges:

"Mr. Rose Was Denied the Effective Assistance of Counsel During His Trial."

{¶21} A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the performance was not deficient, then there is no need to review for prejudice and vice versa. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶22}** In evaluating an alleged deficiency in performance, the court asks whether there was "a substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Our review is highly deferential to counsel's decisions as there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 142-143, (there are "countless ways to provide effective assistance in any given case"), citing *Strickland*, 466 U.S. at 689. A reviewing court should not second-guess the strategic decisions of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶23}** As to the prejudice prong, the court must find there is a reasonable probability the result of the proceedings would have been different but for counsel's serious error. *Id.* at 558. Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d at 142, fn. 1, quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶24}** Appellant sets forth multiple complaints about defense counsel under this assignment of error. He divides the assignment of error into five sections, some with multiple arguments thereunder.

**{¶25}** First, he complains defense counsel's opening statement disclosed that Appellant exercised his right to remain silent by asking for counsel after the detective approached him at the scene and advised him of his *Miranda* rights. (Tr. 66). *See Miranda v. Arizona*, 384 U.S. 436, 4789, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Fifth Amendment's right to remain silent with accompanying right to counsel). Appellant says this disclosure may have prompted the jury to infer the red bag was his because each of the three females disclaimed ownership of the bag. He points out the jury would not have otherwise learned he exercised his rights after being *Mirandized*. *See Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (it is fundamentally unfair for the prosecutor to breach the promise in the warnings by using post-*Miranda* silence at trial); *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807

N.E.2d 335, ¶ 15-18 (due process violation to use post-arrest, post-*Miranda* invocation of right to counsel as substantive evidence of guilt in the state's case-in-chief).

**{¶26}** As the state points out, the evidence on Appellant's control of the red bag was overwhelming and not reliant on any inference from knowledge that Appellant invoked his rights to counsel and to remain silent. Regardless, we must "refrain from second-guessing the strategic decisions of trial counsel." *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 53. One strategy of counsel was to suggest the detective unreasonably favored the three female witnesses, none of whom was charged for their participation; this may have included implying the detective rewarded them for not exercising their *Miranda* rights. Defense counsel's disclosure was a tactical decision. *See, e.g., State v. Hankison*, 4th Dist. Scioto No. 09CA3326, 2010-Ohio-4617, ¶ 136-137; *State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082, ¶ 21-23 (no constitutional issue where the defense opened the door on post-Miranda silence, and the elicitation of information about the defendant's post-arrest silence constituted reasonable trial tactics); *State v. Eason*, 7th Dist. Belmont No. 02 BE 41, 2003-Ohio-6279, ¶ 133 (defense counsel did not object to the prosecutor commenting on post-arrest silence because counsel first raised the issue as a matter of strategy). Accordingly, this argument lacks merit.

**{¶27}** In the second section of this assignment of error, Appellant contends defense counsel should have objected to multiple portions of the detective's testimony. For instance, Appellant complains there was no objection to the state eliciting the detective's testimony that the investigation began when a confidential informant disclosed he was being recruited to drive a car to and from Las Vegas in order to transport drugs. After the detective said the informant disclosed the trip participants and the police gathered information, the state asked, "Did this information center on Mr. Rose?" Without an objection, the detective answered in the affirmative. (Tr. 119).

**{¶28}** The state's brief contends the answers were not objectionable because they explained the detective's investigation. The initial answer explained the reasons for the warrants, the placement of the GPS device, and the decision not to let the informant make the drive after he rented the car. As to the portion of the comment about the information centering on Appellant, Appellant points out the testimony explaining an investigation does not qualify as non-hearsay if the evidence connects the defendant to the offense.

*State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27 ("in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged").

{¶29} In any event, witnesses directly established Appellant was in the vehicle when it was stopped on its way back from Las Vegas with the large amount of cocaine in the trunk. Additionally, witness A already testified Appellant offered to pay all expenses for the trip, also stating she recruited the named informant to rent the car and thought he would be driving the car until he backed out. These were her own statements or Appellant's own statements. It was thus not serious error for counsel to refrain from objecting to the officer's testimony that he learned similar information about the trip; nor did the disclosure result in a fundamentally unfair proceeding.

{¶30} Appellant also complains counsel failed to object when the detective testified he received information a month before the operation that Appellant was a large-scale methamphetamine dealer. (Tr. 119). However, defense counsel had already asked witness A if she saw Appellant with a large amount of drugs or methamphetamine while introducing the informant to Appellant at her house. She responded in the negative to both questions and added, "As far as I knew, he had never sold methamphetamine period." (Tr. 85). It was also defense counsel who asked if it would be true if the informant said Appellant sold methamphetamine, and witness A responded, "He's full of shit." (Tr. 86). Consequently, defense counsel opened the door to this subject, which explained his lack of objection to the detective's later testimony. We also note counsel then cross-examined the detective as to the informant's claim that he saw Appellant with a large bag of methamphetamine. (Tr. 146-147).

{¶31} Appellant criticizes counsel's initial elicitation of the methamphetamine testimony, which he claims would have been excluded even if the informant testified (as had been expected). He asserts it was inadmissible "other acts" evidence under Evid.R. 404(B) and unfairly prejudicial under Evid.R. 403(A). However, one prong of defense counsel's strategy was to make the informant look untruthful and uninformed. Even

debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶32} Another argument about the failure to object to the detective's testimony involves the state asking whether the detective used a process of elimination in his investigation to determine who would be capable of obtaining this amount of drugs. The detective's answer included the following opinion: "I felt that Mr. Bryant was in charge of the operation, and I felt that the female – the three females were being used as decoys" and the females were incapable of arranging the transaction involving the mass amount of cocaine. (Tr. 138-139). Appellant says an officer should be precluded from opining which potential suspect is guilty. *Citing State v. Tyler*, 50 Ohio St.3d 24, 35, 553 N.E.2d 576 (1990) (improper to ask detective his opinion on who a witness saw running in a certain direction but harmless where defendant admitted he was running in that direction). Nevertheless, where an officer expresses their belief on who to charge, a "decision to cross-examine the witness regarding the statements, rather than object, was a matter of defense strategy and trial tactics, and therefore, does not constitute ineffective assistance." *State v. Stidhum*, 1st Dist. Hamilton No. C-170319, 2018-Ohio-4616, ¶ 44.

{¶33} Appellant also points to the following observation of the detective: "I've dealt with [witness A] for years. She's a drug-addicted alcoholic prostitute that has been arrested numerous times for drug-related—small amounts of drugs, drugs paraphernalia, thefts; things that indicate drug use * * * In my opinion, she's not capable of purchasing two kilos of cocaine, not even close. [And the other two females were] in the same boat." (Tr. 164). Notably, this testimony was presented on redirect after defense counsel asked about the recruitment being done by witness A, the bag belonging to witness C next to the red bag, and the lack of an investigation as to whether Appellant had any assets.

{¶34} Relatedly, Appellant says defense counsel should have objected to the following statement by the detective: "by the totality of the circumstances and my investigation, I one-hundred-percent believe that Mr. Bryant was the purchaser of those drugs within, likely, the State of Nevada or somewhere close, and brought it back. I do not believe, with twenty years' experience in drug investigation, that any of those girls could do that." However, this statement was elicited on recross in response to the following question by defense counsel: "You're saying that because you know these people, it couldn't have been them. But because you don't know Mr. Rose, it had to be

him?" The detective answered, "No" before setting forth his opinion. He was then asked about being wrong in the past. (Tr. 167). Again, the scope of cross-examination is a matter of trial strategy, and debatable trial tactics do not establish ineffective assistance. *Conway*, 109 Ohio St.3d 412 at ¶ 101.

**{¶35}** Additionally, the argument Appellant presents as to the capability of the females is without merit. Appellant argues if the detective testified as an expert, then his opinion that the three females were incapable of arranging the transaction improperly vouched for their credibility. Citing *State v. Boston*, 46 Ohio St.3d 108, 129, 545 N.E.2d 1220 (1989) ("expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant" who did not testify). However, the detective did not vouch for the witnesses' credibility by disparaging their lifestyle and abilities. *See, e.g., State v. Stowers*, 81 Ohio St.3d 260, 263, 690 N.E.2d 881 (1998) (*Boston* "does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity").

**{¶36}** We also note testimony offered by a police officer can be characterized as lay testimony even where it is based on the officer's specialized knowledge. *State v. Baker*, 2020-Ohio-7023, 166 N.E.3d 601, ¶ 34 (7th Dist.), citing *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 56-57 (allowing a police officer to testify as a lay witness or as an expert on gang tattoos), *State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (although based on experience, the detective can give a lay opinion under Evid.R. 701 that the amount of drugs suggested they were for sale rather than personal use); *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 11 (the officer was permitted to give opinion under Evid.R. 701 that an establishment was a methamphetamine lab based on his observation of items in the house and garbage). "The Ohio Supreme Court has accepted the trend toward allowing lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *Baker*, 2020-Ohio-7023 at ¶ 35, citing *State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001) (a lay opinion based on personal knowledge and experience still falls within Evid.R. 701 even if on a subject outside the realm of common knowledge).

**{¶37}** Moreover, a lay witness can testify "in the form of opinions or inferences * * * which are (1) rationally based on the perception of the witness and (2) helpful to a clear

understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. Contrary to Appellant's contention, the detective's statements about the three females could be viewed as helpful to the determination of a fact in issue. In addition, witness A already testified she used drugs and was an alcoholic who was drunk the whole time in Las Vegas, and testimony indicated witness C experienced difficulty functioning due to withdrawal symptoms. The detective's expression of his knowledge of their drug use was not vouching for their credibility. Additionally, defense counsel may have appreciated the testimony containing negative disclosures on the witnesses.

{¶38} The third section of this assignment of error alleges counsel was ineffective by failing to object when the state asked witness A if Appellant ever supplied her with drugs. Witness A said Appellant sold her crack cocaine "awhile back" but stopped "serving" her when he moved into her house. (Tr. 87). However, this occurred on redirect examination. As the state points out, witness A was asked by defense counsel on cross-examination whether she ever saw Appellant with a large amount of drugs or with methamphetamine. The scope of cross-examination falls within the realm of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *Conway*, 109 Ohio St.3d 412 at ¶ 101.

{¶39} And, contrary to Appellant's contention, the state's question on redirect was not beyond the scope of cross-examination. The state is not expected to provide notice of other acts where the topic is first raised by defense counsel, and the court can excuse notice for good cause. *See* Evid.R. 404(B) (reasonable notice of the general nature of any such evidence *the state intends to use* at trial). We also note the topic of whether Appellant sold the witness drugs on the trip from the supply confiscated on the return trip would not have been an "other act" but would directly involve his possession of the confiscated drugs. Consequently, defense counsel did not fail in an essential duty as counsel by refraining from tendering an objection.

{¶40} In the fourth section of this assignment of error, Appellant addresses witness C's testimony. He says counsel should have objected when witness C was asked if Appellant ever sold her cocaine and she responded, "In the past, yes." (Tr. 107). As the question was presented in the context of asking about the trip, defense counsel may

have believed the question was related to the cocaine on the trip at issue. He also may have considered himself to have opened the door to this subject as he previously asked witness A if she ever saw Appellant with a large amount of drugs, an expensive vehicle, large amounts of cash, or methamphetamine; also, witness A already said Appellant sold her crack cocaine in the past. (Tr. 85, 86). *See generally State v. Hornschemeier*, 2012-Ohio-2860, 973 N.E.2d 779, ¶ 31 (1st Dist.) (defense counsel's opening statement on a subject opened the door to testimony on the subject).

**{¶41}** Appellant also claims there should have been a hearsay objection when witness C testified witness A called to invite her on the trip where "[e]verything just was paid for" and the prosecutor then asked, "By?" Witness C answered, "Mr. Rose." (Tr. 104). However, witness C additionally testified she personally witnessed Appellant pay or arrange payment for various items on the trip (such as when he called to arrange for hotel payments in the car and provided her with $100 for food one day). (Tr. 104, 107, 116). Moreover, witness A already testified Appellant said he would pay for the trip if she obtained a rental car and drivers. *See* Evid.R. 801(D)(2) (the defendant's own statement offered against him and presented in the testimony of the person who heard it is not hearsay). Counsel's alleged failures during witness C's testimony were not deficient or outcome-determinative.

**{¶42}** In the final section of this assignment of error, Appellant complains about the failure to object to certain exhibits. We have relocated to this section the related arguments about the failure to object to the detective's testimony on these exhibits (which were originally presented in the second section). Appellant complains defense counsel failed to object to the state's introduction of the detective's testimony on hearsay messages showing witness A recruited the informant to rent and to drive a car on the trip to be paid for by Dollar, also mentioning the name Bryant Rose. (St.Ex. 12). He also says the exhibit was not authenticated as the detective lacked personal knowledge.

**{¶43}** Notably, witness A had already testified on the subject of her communication with the informant. (Tr. 68-70). Moreover, this evidence was only introduced on redirect examination of the detective after the state considered the door opened to introduce the messages. (Tr. 163). Defense counsel specifically asked the detective on cross-examination about the messages while suggesting witness A was the

mastermind and the informant was uniformed and untruthful. It was not deficient to refrain from thereafter objecting to the messages as hearsay; nor was it outcome-determinative.

{¶44} As to authentication, the detective testified Exhibit 12 contained the photographs he took of the messages he saw on the screen of the phone that belonged to witness A; they were actual photos of the phone as he viewed the screens. Prior testimony indicated her phone was confiscated when the vehicles were stopped. The first screen showed her name and her profile picture. It was discernible which messages were outgoing. The detective said witness A was communicating with the informant in the depicted conversation. The informant fully cooperated in the investigation, including supplying the vehicle for installation of GPS before the trip. The conversation began in the same manner as witness A related in her testimony; she asked the informant to rent and to drive a car on the paid-for trip. Under these circumstances, counsel did not render ineffective assistance by failing to object (and require the state to ask how the detective knew the messages were to the informant).

{¶45} In fact, defense counsel was the one who asked about these communications between witness A and the confidential informant (while pointing out they were used in the search warrant affidavit). Counsel may have believed the viewing of the messages would be helpful to a defense strategy, such as to show witness A was heavily involved in the planning or to show she was assuring the informant the trip merely involved obtaining marijuana from the dispensaries. We also note the successful introduction of the messages seemingly factored in the state's decision to refrain from calling the informant to the stand, which may have pleased the defense. (Tr. 198).

{¶46} Lastly, we address Appellant's criticism of defense counsel for failing to object when the detective testified about the exhibits related to marijuana and when those exhibits were admitted. He claims the marijuana-related evidence should have been challenged as improper "other acts evidence" and compares the situation to a case involving improper "other weapons evidence." *See State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821 (error to admit "other weapons evidence—i.e., irrelevant evidence of weapons unrelated to the charges" in order to show propensity). However, the evidence as to Appellant's purchase of two jars of marijuana at a legal dispensary with his medical marijuana card was not introduced to show propensity to transport 2,000 grams of cocaine. Rather, the marijuana-related evidence here was directly connected

to Appellant's identity as the person who possessed the 2,000 grams of cocaine in the red bag. *See* Evid.R. 404(B); *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651 ("while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue").

{¶47} Along with the two jars of marijuana in the red bag from the trunk, there were jar labels with Appellant's name on them and a recent Nevada dispensary receipt for marijuana. The purchaser identification number on this receipt matched the identification number on Appellant's medical marijuana card, which was recovered from the back seat where he was sitting. (Tr. 129-135). The marijuana, labels, and receipt were collected from the specific bag containing the cocaine. (Two other trip participants testified as to why they could not purchase marijuana at the dispensary.) The state disclosed the evidence to defense counsel in discovery. *See* Evid.R. 404(B) (reasonable notice of the general nature of any such evidence the state intends to use at trial). Counsel may have reasonably strategized he would lose the objection. He also may have tactically believed the evidence could be useful, such as to suggest Appellant was a legal purchaser of marijuana rather than a major drug offender and to show the plan for the trip was to legally obtain marijuana. It is also noted the evidence showing a receipt in the red bag contained a purchaser number matching the number on Appellant's identification would have been admissible even if Appellant's other acts argument as to the marijuana had merit.

{¶48} In sum, counsel did not render deficient performance, and/or there is no indication serious errors resulted in a reasonable probability the outcome would have been different, as the results were not unreliable and the proceeding was not "fundamentally unfair" due to the performance of trial counsel. *See Carter*, 72 Ohio St.3d at 558. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO:  REAGAN TOKES LAW

{¶49} Appellant's second assignment of error, combined with the corresponding issue presented for review, contends:

"Mr. Rose Was Denied the Effective Assistance of Counsel at the Sentencing Hearing [because counsel failed] to object to the trial court's imposition of a sentence that permits the Ohio Department of Rehabilitation and Corrections, pursuant to a recently

enacted statute that the Supreme Court of Ohio has yet to address, to be the ultimate arbitrator as to the length of the defendant's sentence."

{¶50} The Reagan Tokes Law went into effect on March 22, 2019. Under this law, the court imposing a sentence for a qualifying felony of the first or second degree must determine the maximum term of imprisonment based on a formula applied to the minimum term, which is chosen from those available (or required) under R.C. 2929.14(A)(1)(a) and (A)(2)(a). R.C. 2929.144(B)(1). The court must impose both the minimum and maximum term. R.C. 2929.144(C). The end of the minimum term is the presumptive release date. R.C. 2967.271(B) (unless earned early release[1]).

{¶51} The propriety of releasing the offender on this presumptive date is later rebuttable at a hearing if the Ohio Department of Rehabilitation and Correction (ODRC) determines the prisoner's institutional conduct meets one of the three criteria in R.C. 2967.271(C)(1)-(3). If one of these criteria exists, then the ODRC can "maintain" incarceration for an additional period not to exceed the maximum sentence. R.C. 2967.271(D)(1). The prisoner will receive notice of the hearing in the same manner applicable to hearings regarding possible release on parole. R.C. 2967.271(E).

{¶52} After his conviction of the first-degree felony major drug offender charge, Appellant was sentenced to 11 to 16.5 years. The court imposed the 11-year prison term required for a mandatory major drug offender and then arrived at the indefinite maximum term by adding 5.5 years under the Reagan Tokes Law. Appellant claims counsel was ineffective for failing to object to the Reagan Tokes Law at sentencing. He contends the law is unconstitutional on three grounds: the right to have a jury find any facts required for additional punishment; the separation-of-powers constraints on the executive branch exercising judicial power; and the due process rights to notice and a fair hearing.

{¶53} These three arguments are also presented for review in pending Ohio Supreme Court cases on the statute. *State v. Simmons*, S.Ct. No. 2021-0532 (appeal accepted on Memorandum in Support of Jurisdiction which set forth these three arguments in three separate propositions); *State v. Hacker*, S.Ct. No. 2020-1496 (appeal

---

[1] There is also a provision whereby the ODRC's director may recommend to the sentencing court a prisoner's early release from the minimum, which gives rise to a rebuttable presumption of early release. R.C. 2967.271(A)(2),(F).

accepted on Proposition of Law 1 in Memorandum in Support of Jurisdiction at 4-13, which set forth these three arguments under one proposition).[2]

**{¶54}** First, the state responds by claiming the constitutionality issue is not yet ripe because it is unknown if Appellant will be detained in prison beyond the presumptive release date. However, the Supreme Court recently held, "the issue of the constitutionality of an indeterminate sentence imposed under R.C. 2967.271 ripens at the time of sentencing and that the law may be challenged on direct appeal." *State v. Maddox*, __ Ohio St.3d __, 2022-Ohio-764, __ N.E.3d. __, ¶ 21. In reversing the appellate court's decision that the issue was not ripe, the Court explained: "a challenge to the constitutionality of R.C. 2967.271 is fit for review on a defendant's direct appeal of his or her conviction and prison sentence, because no additional factual development is necessary" and "to refrain from reviewing whether R.C. 2967.271 is constitutional would cause hardship to [the defendant] and others who are similarly situated * * *." *Id.* at ¶ 19. Appellant's arguments are thus ripe for review.

**{¶55}** Second, the state points to a case where this district remanded for imposition of a sentence under the new Reagan Tokes Law where the trial court failed to do so after the law's effective date. *State v. Jones*, 7th Dist. Mahoning No. 20 MA 0059, 2021-Ohio-1164. We stated: "Insofar as the trial court imposed a definite sentence on a second-degree felony committed after March 22, 2019, we find that the sentence is contrary to law. Accordingly, the sentence is vacated and this matter is remanded in order to allow the trial court to impose both a minimum and maximum sentence in conformance with the new indefinite sentencing scheme." *Id.* at ¶ 23. However, the constitutionality of the statute was not addressed by that decision.

**{¶56}** Third, the state emphasizes Appellant's lack of objection before or at sentencing, claiming we should not exercise our discretion to recognize plain error as to whether a statute is facially unconstitutional. We recognize the defendant in *Maddox* did not raise the issue regarding the constitutionality of the statute at sentencing and after ruling the appellate court erred in finding the issue was not ripe, the Supreme Court

---

[2] We note the *Simmons* appellate court addressed only due process and separation of powers as the trial court found the law violated those doctrines. *State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728, ¶ 23 (8th Dist.). The *Hacker* appellate court declined to address the Sixth Amendment prong of the constitutional challenge on appeal because the defendant failed to raise it to the trial court but addressed the other two constitutional challenges as the defendant raised them below. *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 4, 17-18 (3d Dist.).

remanded "to consider the merits of Maddox's constitutional challenge." *Maddox*, __ Ohio St.3d __, 2022-Ohio-764 at ¶ 3, 22. Nevertheless, this was not an opinion on whether the appellate court may find an issue forfeited and then decline to exercise discretion under the plain error doctrine or find an error was not obvious. It seems the Court was simply remanding to address the assignments of error the appellate court refused to review due to their incorrect application of the ripeness doctrine.

{¶57} Maddox's appellate argument alleged the imposition of the unconstitutional additional sentence was plain error and his counsel was ineffective for failing to raise this at sentencing. *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350, ¶ 4. After the remand, the appellate court briefly concluded, "Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers." *Id.* at ¶ 7, citing *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470 (en banc), *Hacker*, 2020-Ohio-5048 (3d Dist.), *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837.

{¶58} For its analysis, the Sixth District "adopt[ed] the dissenting opinion in *Wolfe* as the opinion of this Court." *Id.*, citing *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501 (Gwin, J., dissenting) (disposing of two constitutional arguments along with the defendant's ineffective assistance of counsel argument after the majority found the arguments were not ripe for review). The Sixth District in the remand of *Maddox* did not mention whether the issue was subject to only plain error review but found no error in any event.

{¶59} After issuing *Maddox,* while the Supreme Court was lifting the various stays for briefing in other pending cases, the Court dismissed 10 of those appeals as being improvidently accepted. *In re Cases Held for the Decision in State v. Maddox*, 2022-Ohio-1352. One of the dismissed appeals was the Fifth District's *Wolfe* case cited by the Sixth District on remand in *Maddox*. As pointed out in the state's Memorandum in Response to Jurisdiction filed in the Supreme Court in *Wolfe*, the issue had not been raised to the trial court. *See also Wolfe*, 5th Dist. Licking No. 2020CA00021 (raising ineffective assistance of counsel to the appellate court).

{¶60} This is a common thread among the cases originally stayed but then dismissed by the Supreme Court as being improvidently accepted: the appellate court

found forfeiture of the facial challenge to the sentencing statute and declined to recognize plain error.  For instance, the Eleventh District declined to review the forfeited constitutional challenges to the statute and rejected the ineffective assistance of counsel arguments.  *See, e.g., State v. Jones*, 11th Dist. Lake No. 2020-L-056, 2020-Ohio-7002, ¶ 22, 31; *State v. Ferguson*, 11th Dist. Lake No. 2020-L-031, 2020-Ohio-5578, ¶ 13, 32.  The Twelfth District cases dismissed by the Supreme Court were similar, wherein the appellate court found the failure to raise the constitutionality of the statute below constituted forfeiture of the issue and the failure to raise it did not constitute ineffective assistance of counsel.  *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 11, 17; *State v. Singh*, 12th Dist. Warren No. CA2020-09-056, 2021-Ohio-2158, ¶ 53, 70.  Additionally, in the Eighth District cases dismissed by the Supreme Court, the defendant did not object to his sentence or raise any constitutional challenge to the Reagan Tokes Law during his sentencing hearing and then raised constitutionality on appeal without addressing plain error.  *State v. Stone*, 8th Dist. Cuyahoga No. 109322, 2020-Ohio-5263, ¶ 6, 10; *State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, ¶ 11.[3]

**{¶61}** "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court."  *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (holding the constitutional challenge to bindover statute was forfeited by failing to object below), quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986).  The forfeited constitutional challenge to a statute may be considered on appeal if the reviewing court chooses to exercise its discretion to recognize plain error.  *Id.* at ¶ 16; Crim.R. 52(B).  The discretion to recognize plain error must be exercised "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  In addition to being outcome-determinative, the error must have been an *obvious* one.  *Id.*

---

[3] Note the trial court did not choose to impose a certain sentence on Appellant under the statute but was required to impose both the minimum (due to the status as a major drug offender) and the maximum due to the Reagan Tokes Law formula.  In other words, there was no surprise as to the sentence announced by the court.

{¶62} As set forth in more detail in the prior assignment of error, the doctrine of ineffective assistance of counsel, which Appellant raises as to this sentencing issue, requires a showing of both deficient performance due to a substantial violation of defense counsel's essential duties to a client and a reasonable probability the result of the proceedings would have been different if not for the error. *Bradley*, 42 Ohio St.3d at 141-142. For the following reasons, this assignment of error is overruled regardless of whether we undertake a plain error review, an ineffective assistance of counsel review, or a direct review of the statute's constitutionality.

{¶63} "A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41. There exists a strong presumption in favor of a statute's constitutionality. *Id.*; *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25. All doubts on constitutionality are to be resolved in favor of the statute. *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, ¶ 5 (requiring the capital defendant to demonstrate beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible in order to prevail on a facial challenge to the death penalty scheme). "A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37.

{¶64} Regarding Appellant's separation of powers argument, the Reagan Tokes Law is not akin to this state's prior "bad time" law (former R.C. 2967.11), which allowed the executive branch to extend a sentence beyond that imposed by the trial court. In the case relied on by Appellant, the defendant was sentenced to eight months in prison, but the parole board added 90 days to the judicially imposed sentence after the defendant attacked a correction officer. *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 133, 729 N.E.2d 359 (2000). The Court concluded the bad time provisions intruded on the judicial branch's power to determine criminal guilt and an appropriate sentence and unconstitutionally permitted "the executive branch to prosecute an inmate for a crime, to determine whether a crime has been committed, and to impose a sentence for that crime.

This is no less than the executive branch's acting as judge, prosecutor, and jury." *Id.* at 135.[4]

**{¶65}** However, under the Reagan Tokes Law, the judiciary imposes a sentence to be enforced by the executive branch's ODRC. The statute does not allow the ODRC to impose a sentence that the trial judge did not already impose. "Unlike *Bray*, the Reagan Tokes Law does not permit ODRC (the executive branch) to maintain Hacker beyond the maximum prison term imposed by the trial court." *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112, ¶ 22 (3d Dist.).

**{¶66}** "R.C. 2929.144 shares nothing in common with the 'bad time' law at issue in *Bray*. Any application of *Bray* to the indefinite, nonlife felony sentencing scheme is misplaced. Under R.C. 2929.144, the trial court imposes the maximum term in the final entry of conviction such that ODRC is merely tasked with implementation of the imposed sentence. This complies with constitutional mandates." *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, ¶ 36. *See also State v. Ratliff,* 5th Dist. Guernsey No. 21CA000016, 2022-Ohio-1372, ¶ 52-56; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 23 ("the Reagan Tokes Law does not violate the separation-of-powers doctrine").

**{¶67}** Notably, "the executive branch has always possessed the authority to determine parole, parole revocation, or sentencing-release matters under an indefinite sentencing scheme after the trial court imposes the minimum and maximum terms." *Delvallie*, 8th Dist. No. 109315 at ¶ 37. The ability to "maintain" a prisoner beyond the minimum part of a judicially imposed sentence under R.C. 2929.144 is "not meaningfully distinct from Ohio's current parole system * * * The trial court imposes the minimum and maximum terms of imprisonment. ODRC, as an agency under the executive branch of government, simply enforces the judicially imposed sentence and has been delegated the responsibility over the release determinations * * *." *Id.* at ¶ 24-25, 38. The separation of powers argument is overruled.

---

[4] Immediately after *Bray*, the Court distinguished the bad time statute from the executive branch's discretionary authority on post-release control and found no separation of powers issue where the trial court incorporated post-release control into its sentence. *See State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, citing *Woods v. Telb*, 89 Ohio St.3d 504,512-513, 733 N.E.2d 1103 (2000), *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 19.

**{¶68}** Relying on the *Apprendi* line of cases, Appellant contends the Reagan Tokes Law violates the constitutional right to be free from punishment for conduct for which there was no right to a jury trial as required under the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution. If factual findings are required in order to *sentence* a defendant to a term of imprisonment in excess of the statutory maximum, then those findings for the enhanced sentence must be found by the jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The only limit is a trial court cannot impose a sentence "beyond the prescribed statutory maximum" based on a determination of facts not submitted to a jury. *Oregon v. Ice*, 555 U.S. 160, 167, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) (consecutive sentence findings did not violate the right to a jury).

**{¶69}** Here, however, the sentencing involves the pre-existing discretion to choose the minimum sentence (or a mandatory sentence based on facts which were found by a jury) with the statute then providing for the maximum sentence calculation (under a formula based on the minimum sentence). There are no factual findings required before the court imposes the maximum portion of the indefinite sentence. As the trial court is not making factual findings to impose the sentence, the statute does not cause a court to violate the principles in *Apprendi* or the surviving line of cases based upon it. *Ratliff*, 5th Dist. No. 21CA000016 at ¶ 60-61; *Delvallie*, 8th Dist. No. 109315 at ¶ 44, 47; *State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 24-25; *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 13-20.

**{¶70}** Contrary to Appellant's suggestion, the ODRC's ability to rebut the presumptive release date does not violate *Apprendi* principles either. The statutory maximum discussed in *Apprendi* is the maximum sentence *a judge* may impose based on the facts found by a jury or admitted. *Blakely v. Washington*, 542 U.S. 296, 303, 122 S.Ct. 2428, 159 L.Ed.2d. 403 (2004). In addition, the ODRC would not be extending the maximum sentence imposed but making decisions within the indefinite range already imposed by the trial court, similar to decisions on granting parole but with a presumption in the prisoner's favor. *Ratliff*, 5th Dist. Guernsey No. 21CA000016, 2022-Ohio-1372, ¶ 60 (and the facts for maintaining the court's sentence beyond the minimum end of the range are the result of prison disciplinary proceedings, not the underlying crime); *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, ¶ 7 (by rebutting the

Case No. 21 JE 0014

presumption of release, the ODRC "is not extending the defendant's prison term or imposing its own sentence for violations that occur while the offender is serving the imposed term of imprisonment"). "In other words, ODRC does not 'increase' a penalty based upon facts not found by a jury but merely administers the sentence already imposed by the trial court for conviction of an offense for which the offender has the right to a jury trial." *Thompson*, 2d Dist. No. 2020-CA-60 at ¶ 24, quoting *Rogers*, 12th Dist. No. CA2021-02-010 at ¶ 18. In accordance with these reasons, Appellant's Sixth Amendment argument is overruled.

{¶71} Lastly, Appellant contends the Reagan Tokes Law violates due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution. Asserting his due process right to a fair hearing, Appellant complains the statute does not allow for (or fails to specifically grant) various trial rights (jury trial, beyond a reasonable doubt, counsel, subpoena, cross-examination). He also complains about the three options the ODRC can use at the hearing to rebut the presumption of release at the minimum sentence. He claims the first option fails to provide adequate notice as to what specific conduct can be used against him. On the other two options, Appellant argues there are inadequate parameters on the ODRC's discretion when making the required preliminary decisions.

{¶72} The first option the ODRC can use to rebut the presumptive release date requires both of the following:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

R.C. 2967.271(C)(1).

Case No. 21 JE 0014

{¶73} The second option specifies a level and a date range: "Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing." R.C. 2967.271(C)(2). The third option specifies a housing category and specific date: "At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level." R.C. 2967.271(C)(3).

{¶74} "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication * * *." *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). As indicated above in disposing of Appellant's jury trial argument, the hearing (for determining whether to maintain imprisonment under the court's sentence) is not a criminal trial. As the Eighth District observed, there is "no reason to distinguish between the exercise of its discretion in determining parole matters and the DRC's discretion in determining whether an offender's minimum term of incarceration should be extended." *Simmons*, 2021-Ohio-939 at ¶ 22.

{¶75} "In the context of parole, [the United States Supreme Court has] held that the procedures required are minimal. * * * [A] prisoner * * * received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Swarthout*, 562 U.S. at 220. Moreover, the underlying "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Eighth District rejected a trial rights argument mirroring the one made by Appellant here. *Delvallie*, 8th Dist. No. 109315 at ¶ 50 ("It has never been concluded that inmates are due preconviction constitutional rights during enforcement of judicially imposed sentences").

{¶76} We also note in "determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21. Additionally, as the Eighth District has observed:

R.C. 2967.271(C)(1), (2) and (3) set forth very specific factors for the DRC to consider in determining whether an inmate may be imprisoned beyond his minimum release date, thereby limiting its discretion. Inmates are given adequate notice of the conduct that will lead to rule infractions or restrictive housing assignments, factors that trigger the DRC to extend an inmate's minimum term of incarceration. Ohio Adm. Code 5120-9-06 sets forth inmate rules of conduct. Ohio Adm. Code 5120-9-08 provides detailed disciplinary procedures for inmate rule violations, with a hearing before the Rules Infraction Board and notice to the inmate of the hearing and an opportunity to appeal the decision of the board. Ohio Adm. Code 5120-9-10 sets forth the procedures for when and under what circumstances an inmate may be placed in and/or transferred to a restrictive housing assignment.

*State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728, ¶ 21 (8th Dist.), *appeal accepted*, 163 Ohio St.3d 1492, 2021-Ohio-2270, 169 N.E.3d 1273. *See also Ratliff*, 5th Dist. No. 21CA000016 at ¶ 47-51 (finding the Reagan Tokes Law does not violate due process).

**{¶77}** The law under review "does not give the DRC unfettered discretion to require an offender to serve more than the minimum term. And it affords an offender notice and an opportunity to be heard before more than the minimum may be required." *Ferguson*, 2d Dist. No. 28644 at ¶ 25. "[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner. * * * The Reagan Tokes Law satisfies these requirements." *State v. Sinkhorn*, 2d Dist. Clark No. 2019-CA-79, 2020-Ohio-5359, ¶ 33, *appeal accepted*, 164 Ohio St.3d 1419, 2021-Ohio-2923, 172 N.E.3d 1042, quoting *Ferguson*, 2d Dist. No. 28644 at ¶ 25. *See also Thompson*, 2d Dist. No. 2020-CA-60 at ¶ 13, 21-23. In accordance, the challenged law does not violate due process.

**{¶78}** Counsel's performance of refraining from challenging the facial constitutionality of a sentencing statute did not constitute a substantial violation of an essential duty owed by counsel, and there was not a reasonable probability of success had counsel attempted to invalidate the statute on its face, which was presumed constitutional. We additionally conclude there was no error by the trial court, as the statute is constitutional beyond a reasonable doubt. Furthermore, even assuming one or more of the constitutional arguments were to be found meritorious, we would decline to

exercise our discretionary review under the unraised doctrine of plain error and we would opine that any error would not have been obvious. Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR THREE: COSTS

**{¶79}** Appellant's third assignment of error alleges:

"The Trial Court Erred When It Initially Ordered Mr. Rose in Its Sentencing Entry to Pay Court Costs and Appointed Counsel Fees."

**{¶80}** Initially, it is noted Appellant was appointed counsel below and ordered to complete a financial affidavit. (11/19/20 J.E.). In the May 14, 2021 sentencing entry, Appellant was also appointed counsel for appeal. After sentencing, defense counsel filed a motion for approval of payment and for extraordinary fees ($6,354 where the cap was $6,000). Attached to the motion was Appellant's financial affidavit, stating he had no income or assets.[5] The trial court approved counsel's payment request. A private appellate counsel then filed a motion asking the trial court to provide a transcript and allow an appeal without cost, stating he was retained by Appellant's family for the appeal but Appellant was indigent. The trial court granted the motion. (6/2/21 J.E.).

**{¶81}** This assignment of error is based on the concluding line in the sentencing entry stating: "Defendant is ordered to pay costs of this action and Court-Appointed Counsel Costs, if any, as well as all fees permitted pursuant to R.C. 2929.18(A)(4)." Appellant contends it was improper to impose these costs in the entry without having mentioned them at the sentencing hearing. He relies on a case stating the imposition of court costs under R.C. 2947.23 in the entry without imposing them at the sentencing hearing is reversible error, and he urges the extension of the *Joseph* rationale to cover the imposition of additional costs under R.C. 2929.18(A)(4) and court-appointed counsel costs. *See State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

**{¶82}** However, the relied upon holding in "*Joseph* is no longer good law for this point." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028.

---

[5] The financial affidavit, signed by Appellant on 3/10/21, informed Appellant that if it is determined by the county or the court that legal representation should not have been provided, he may be required to reimburse the county for the costs of representation provided and referred to a county recoupment program. *See* R.C.120.05(E) (also stating, "Any action filed by the state public defender to collect legal fees hereunder, must be brought within two years from the last date legal representation was provided."); O.A.C. 120-1-05 (partial county recoupment if person's gross income exceeds 125 percent of the federal poverty level).

Statutorily, a judge is mandated to assess the costs of prosecution against all convicted criminal defendants. R.C. 2947.23(A). "[A]lthough costs in criminal cases are assessed at sentencing and are included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15.

**{¶83}** Even though the costs statute did not previously provide for a waiver of the assessed costs, a defendant could still seek waiver based on the Supreme Court's reading of a different statute on waiving additional costs. *Joseph*, 125 Ohio St.3d 76 at ¶ 11, citing R.C. 2949.092 (certain additional court costs may be waived only "if the court determines that the offender is indigent and the court waives the payment of all court costs imposed upon the offender"). The Court emphasized any waiver was a waiver of *payment* (rather than a waiver of assessment) and warned, "waiver of costs is permitted—but not required—if the defendant is indigent." *Id.*, quoting *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14.

**{¶84}** The *Joseph* Court then applied the principle that a motion to waive costs must be made at sentencing or the issue is waived as res judicata. *Id.* at ¶ 12, citing *Threatt*, 108 Ohio St.3d 277 at paragraph two of syllabus. It was therefore concluded if costs were not mentioned at the sentencing hearing, then the defendant was deprived of his only opportunity to seek a waiver of costs. *Joseph*, 125 Ohio St.3d 76 at ¶ 13, 22. The Court said the error was not harmless and remanded for the limited purpose of allowing the defendant to move for waiver of payment of costs. *Id.* at ¶ 22-23.

**{¶85}** Subsequently, the legislature abrogated this holding by amending R.C. 2947.23 to provide: "The court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter." R.C. 2947.23(C) (effective 3/22/13). Consequently, the Supreme Court thereafter refused to apply *Joseph* to a case where costs were imposed in the sentencing entry without being discussed at sentencing. *Beasley*, 153 Ohio St.3d 497 at ¶ 263-265 (the holding on costs garnered a majority of votes).

**{¶86}** Declaring "*Joseph* was no longer good law on this point," the Court pointed out the result in *Joseph* was dictated by the prior inability to seek waiver of costs unless the court orally announced the imposition of costs at the sentencing hearing. *Id.* at ¶ 263-264. The Court concluded post-amendment requests for a remand have no merit

because defendants no longer need a remand in order to file a motion to waive costs. *Id.* at ¶ 265 (also pointing out the decision whether to waive payment of costs for an indigent defendant is in the trial court's discretion rather than mandatory).

**{¶87}** Appellant's argument on costs imposed under R.C. 2947.23(A) is the same as the argument rejected in *Beasley* and is therefore overruled.

**{¶88}** We turn to the argument on additional court costs under R.C. 2929.18(A)(4). This statute provides:

> in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * *. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
>
> (4) A state fine or costs as defined in section 2949.111 of the Revised Code.

R.C. 2929.18(A)(4).

**{¶89}** The phrase "state fine or costs" is defined as costs imposed or forfeited bail collected by the court under R.C. 2743.70 for the reparations fund or under R.C. 2949.091 for the indigent defense support fund and all fines, penalties, and forfeited bail collected by the court and paid to a law library association under R.C. 307.515. R.C. 2929.111(A)(2). At issue here are the costs payable to the state funds under R.C. 2743.70 and R.C. 2949.091.[6]

**{¶90}** Although R.C. 2929.18(A) uses permissive language in discussing the options for various financial sanctions, R.C. 2743.70 and R.C. 2949.091 contain mandatory costs. Under R.C. 2743.70, the court "shall" impose $30 for a felony "as costs in the case in addition to any other court costs the court is required by law to impose upon the offender." R.C. 2743.70(A)(1)(a). This specific sum is to be transmitted to the state treasurer for deposit in the reparations fund. R.C. 2743.70(B).

**{¶91}** Using substantially the same language, R.C. 2949.091 states $30 for a felony "shall" be imposed "as costs in the case in addition to any other court costs that

---

[6] The items in the law library statute were not at issue here, as there was no fine, penalty, or forfeited bail. *See* R.C. 307.515(C) (clerk of common pleas court shall deposit a certain amount of the fines, penalties, and forfeited bail into the county law library resources fund).

Case No. 21 JE 0014

the court is required by law to impose upon the offender." R.C. 2949.091(A)(1)(a)(i). This specified sum is to be transmitted for deposit in the state's indigent defense support fund upon conviction. R.C. 2949.091(B).

{¶92} Therefore, the applicable state costs under R.C. 2929.18(A)(4) are the two $30 amounts mandated by R.C. 2743.70 and R.C. 2949.091 upon every felony conviction, which are specifically called "court costs" in those statutes (and in R.C. 2949.092). These statutes on paying court costs to the two state funds both say: "The court shall not waive the payment of the * * * thirty * * * dollars court costs, unless the court determines that the offender is indigent and waives the payment of *all* court costs imposed upon the indigent offender." (Emphasis added.) R.C. 2743.70(A)(1); R.C. 2949.091 (A)(1)(b). A related statute reiterates:

> If a person is convicted of or pleads guilty to an offense and the court specifically is required, pursuant to section 2743.70, 2949.091, 2949.093, or 2949.094 of the Revised Code or pursuant to any other section of the Revised Code to impose a specified sum of money as costs in the case in addition to any other costs that the court is required or permitted by law to impose in the case, the court shall not waive the payment of the specified additional court costs that the section of the Revised Code specifically requires the court to impose unless the court determines that the offender is indigent and the court waives the payment of all court costs imposed upon the offender.

R.C. 2949.092. This is the statute cited by the Ohio Supreme Court when explaining there was a method to seek a waiver of payment of court costs under R.C. 2947.23 before said statute was amended to specify the ability to seek waiver at sentencing or any time thereafter. *See Joseph*, 125 Ohio St.3d 76 at ¶ 11 (emphasizing the statutory reference to the waiver of payment of "all court costs" when allowing the waiver of payment of the specified sum court costs).

{¶93} As the ability to ask the court to waive payment of these "additional court costs" is dependent upon successfully seeking waiver of payment of all court costs, we find waiver of these mandatory additional court costs can be sought along with the post-judgment waiver of court costs permitted under R.C. 2947.23(C). Accordingly, the *Beasley* holding also applies to dispose of Appellant's argument about the imposition of

additional court costs under R.C. 2929.18(A)(4), just as it directly disposes of Appellant's argument about the imposition of R.C. 2947.23 costs of prosecution.[7]

**{¶94}** Lastly, we move to the order in the sentencing entry for Appellant to pay "Court-Appointed Counsel Costs, if any * * *." The parties both read this order as the imposition of court-appointed counsel *fees* under R.C. 2941.51(D) (which statute refers to such fees as "costs of the services rendered").

**{¶95}** The statute begins by explaining, "Counsel appointed to a case * * * shall be paid for their services by the county the compensation and expenses that the trial court approves." R.C. 2941.51(A). These amounts approved by the court "*shall not be taxed as a part of the costs and shall be paid by the county.*" (Emphasis added.) R.C. 2941.51(D). "However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." *Id.* (the county shall then pay a percentage of the person's payment to the state public defender to be credited to the client payment fund). Unlike court costs, assessment of court-appointed counsel fees to a defendant is not mandatory.

**{¶96}** In the *Taylor* case cited by the parties, the Supreme Court initially concluded a trial court has authority to impose court-appointed counsel fees on a defendant under R.C. 2941.51, after the defendant argued the statute did not say the assessment was within the province of the trial judge. *State v. Taylor*, 163 Ohio St.3d 508, 2020-Ohio-6786, 171 N.E.3d 290, ¶ 24. The Court then found the trial court was not required to make explicit findings on the record that the defendant has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered. *Id.* at ¶ 27-28 (while noting it is the best practice in order to allow meaningful appellate review).

**{¶97}** The state relies on this portion of the Court's holding and presents a one-sentence argument (as to the whole assignment of error), concluding the trial court properly ordered Appellant to pay his court-appointed counsel fees because *Taylor* said

---

[7] The case Appellant cites was pre-*Beasley*. *See State v. Tucholski*, 11th Dist. Ashtabula No. 2011-A-0069, 2012-Ohio-5591, ¶ 32 (the announcement of liability for court costs at sentencing did not notify of liability for R.C. 2929.18(A)(4) financial sanctions). Also, the Eleventh District's distinction between costs was rejected by the Third and Twelfth Districts. *See State v. Jackson*, 2013-Ohio-1390, 990 N.E.2d 184, ¶ 19 (3d Dist.); *State v. Hall*, 12th Dist. Warren No. CA2011-05-043, 2011-Ohio-5748 (both cases held the imposition of costs of prosecution at sentencing would include R.C. 2929.18(A)(4) costs).

the trial court is not required to make findings on the record. (St.Br. 9). However, the Supreme Court in *Taylor* addressed whether the court had to state on the record at sentencing the statutory finding in R.C. 2941.51(D) ("the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered").

{¶98} As Appellant points out, the Court made no comment on the ability to impose counsel fees in a judgment when they were not first imposed at the sentencing hearing or some other oral hearing. In fact, the trial court in *Taylor* specifically stated at the sentencing hearing that it was ordering the defendant to pay $130 to the assigned-counsel-budget-fund (which the Supreme Court characterized as a "court-appointed counsel fee"). *Taylor*, 163 Ohio St.3d 508 at ¶ 5-6.

{¶99} The state's argument also fails to address the remainder of the Supreme Court's holding in *Taylor*. In addressing the statute's silence as to when a court may impose court-appointed counsel fees, it was noted sentencing is not the only time court-appointed counsel fees can be assessed because the provisions do not only apply to criminal cases. *Id.* at ¶ 33.

{¶100} The Court emphasized R.C. 2941.51 "explicitly states that court-appointed-counsel fees shall not be taxed as costs" and the statute does not say these fees shall be part of the defendant's sentence, in contrast with R.C. 2947.23 (which states the costs of prosecution shall be included in the sentence) and R.C. 2929.18 (which states financial sanctions are imposed as a part of a sentence). *Id.* at ¶ 34-35. "Trial courts may impose only sentences that are provided for by statute. * * * [B]ecause there is no statutory authority allowing a trial court to 'sentence' a defendant to pay court-appointed-counsel fees, such an order cannot be included as a part of the defendant's sentence." *Id.* at ¶ 35.

{¶101} In other words, "the language used by the General Assembly in R.C. 2941.51 and in related statutes leads us to conclude that while the fees may be imposed at sentencing, the fees cannot be included as a part of the defendant's sentence, and should instead be imposed in a separate entry." *Id.* at ¶ 32, 37 ("the best practice would be to include the order in a separate entry, apart from the sentence").

{¶102} "[I]f the assessment of the fees is included in the sentencing entry, the court *must* note that the assessment of the court-appointed-counsel fees is a civil

assessment and is not part of the defendant's sentence." (Emphasis added.) *Id.* at ¶ 37. Where the trial court's judgment failed to so state and improperly imposed court-appointed counsel fees within the sentencing sections for financial obligations and recoupment, the Supreme Court concluded:

> We vacate the portion of the sentencing entry imposing court-appointed-counsel fees upon [the defendant]. There is no need to resentence [the defendant] because, as explained above, the fee order was not lawfully part of his sentence. We express no opinion on whether a new order imposing court-appointed-counsel fees on [the defendant] may be entered in accordance with this opinion and other applicable law.

*Taylor*, 163 Ohio St.3d 508 at ¶ 38 (all justices agreed the trial court erred, with two justices wishing to additionally order the trial court to file a separate entry and two justices wishing to prohibit the trial court from doing so).

{¶103} Appellant's sentencing entry failed to indicate "the assessment of the court-appointed-counsel fees is a civil assessment and is not part of the defendant's sentence" as required by *Taylor*. *See id.* at ¶ 37. In addition (and to the extent the trial court was referring to court-appointed counsel fees), the court improperly imposed those fees as part of Appellant's sentence, suggesting they were being taxed as costs. The order for Appellant to pay items related to court-appointed counsel was specifically labeled "Costs" and placed in the same grammatical sentence between the costs of the action and the additional costs permitted under R.C. 2929.18(A)(4). However, the statute allowing for the assessment of court-appointed counsel fees and expenses specifically states they shall not be taxed as part of the costs. R.C. 2941.51(D).

{¶104} Appellant's third assignment of error is therefore sustained in part. Applying *Taylor*, we conclude the trial court erred to the extent the court imposed court-appointed counsel fees and expenses (or the costs of services rendered) as part of the sentence. Our remedy follows the remedy set forth in *Taylor,* whereby we vacate the portion of the sentencing entry ordering Appellant to pay "Court-Appointed Counsel Costs." *See Taylor*, 163 Ohio St.3d 508 at ¶ 37 (and where a plurality expressed no opinion on whether a new order imposing court-appointed-counsel fees may be entered, as it was not ripe for review).

**{¶105}** It is noted a statute related to the costs involved in initially obtaining court-appointed counsel says where a criminal defendant requests or is appointed counsel, the court "shall assess, unless the application fee is waived or reduced, a non-refundable application fee of twenty-five dollars." R.C. 120.36(A)(1) (subject to certain exceptions). "The court shall direct the person to pay the application fee to the clerk of court" which the person shall pay within seven days of filing a financial disclosure form. *Id.* This statute specifically instructs: "If the person does not pay the application fee within that seven-day period, the court shall assess the application fee at sentencing or at the final disposition of the case." *Id.* Here, the docket shows this $25 amount was charged as an "Indigent Fee" when counsel was appointed on November 19, 2000 and remained outstanding as part of the $234.50 in costs.

**{¶106}** We refer back to our above block-quote of R.C. 2949.092, the statute that also applies to the two types of court costs that are paid to state funds and which states the court shall not waive those "specified additional court costs" unless the court waives all court costs. In addition to listing the statutes referring to state costs, the statute also applies when the court "specifically is required * * * pursuant to any other section of the Revised Code to impose a specified sum of money as costs in the case in addition to any other costs that the court is required or permitted by law to impose in the case * * *." R.C. 2949.092. The $25 cost of applying for court-appointed counsel is a "specific sum of money" required by a specific section of the Revised Code (R.C. 120.36) to be assessed at sentencing, essentially as a form of costs.

**{¶107}** The state construes the court's language as imposing court-appointed counsel fees. Nevertheless, even if the trial court's "Court-Appointed Counsel Costs" language intended to refer only to the appointed counsel "application fee" aspect of costs, then our deletion of "Court-Appointed Counsel Costs" under the *Taylor* rationale does not affect the $25 application fee. This is because the portion of the order imposing the "costs of this action" encompasses the costs of prosecution and additional costs of this $25 application fee.

### CONCLUSION

**{¶108}** For the foregoing reasons, we affirm Appellant's conviction of drug possession with a major drug offender specification and the term of imprisonment. The portion of the sentencing entry ordering Appellant to pay various court costs is upheld,

except to the extent the court sought to impose court-appointed counsel fees. The phrase "Court-Appointed Counsel Costs" is struck from the sentencing entry, and any attempt to impose court-appointed counsel fees is vacated.

Donofrio, P J., concurs.

Waite, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the final judgment and order of this Court is that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is Affirmed, Upheld and Vacated. Appellant's conviction of drug possession with a major drug offender specification and the term of imprisonment is affirmed. The portion of the sentencing entry ordering Appellant to pay various court costs is upheld, except to the extent the court sought to impose court-appointed counsel fees. The phrase "Court-Appointed Counsel Costs" is struck from the sentencing entry, and any attempt to impose court-appointed counsel fees is vacated. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**